IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SONIA ALICIA RICHARDSON and ARACELY DELGADO CRUZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-0742 |
| JOHN F. KERRY, United States Secretary of State, | § § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This immigration case is before the Court on Defendant John F. Kerry's ("Defendant") Motion to Dismiss [Doc. # 16] ("Motion"). Plaintiffs Sonia Alicia Richardson ("Richardson") and Aracely Delgado Cruz ("Cruz," and together with Richardson, "Plaintiffs") filed a Response [Doc. # 19], to which Defendant replied [Doc. # 20]. In briefing Defendant's Motion, the parties relied extensively on evidence outside of the pleadings, which the Court generally may not consider in ruling on a motion to dismiss. Accordingly, the Court *sua sponte* converted Defendant's Motion into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and permitted the parties additional time to file supplemental briefing and additional evidence. *See* Order dated July 28, 2014 [Doc.

# 21]. Plaintiffs thereafter filed Supplemental Exhibits in Support of its Opposition to Defendant's Motion to Dismiss [Doc. # 22], and Defendant filed a Supplemental Reply [Doc. # 24]. Having reviewed the parties' briefing, the applicable legal authorities, and the evidence of record, the Court **grants** Defendant's Motion.

## I.    BACKGROUND

On or about October 19, 1993, Richardson, a naturalized U.S. citizen, filed a Petition for Alien Relative ("I-130" or "Visa Petition") for her sister, Cruz, who is a Mexican national. Plaintiffs' Original Complaint [Doc. # 1] ("Complaint"), ¶¶ 2, 3, 8; Notice of Action [Doc. # 1-2], at ECF page 1. An I-130 is used to establish a relationship between a U.S. citizen (the "petitioner") and an alien relative (the "beneficiary"). When an I-130 is filed, a visa priority date is established that determines when the beneficiary may apply for an immigrant visa and adjust status within the United States.[1] Complaint, ¶ 9. On January 3, 1994, the Immigration and Naturalization Service ("INS") approved Richardson's I-130, and mailed her notice of approval a week later. *See* Declaration of Matthew McNeil [Doc. # 16-8] ("McNeil Decl."), ¶ 4;[2] Complaint, ¶ 8; Screenshot from United States Citizenship

---

[1]   Filing an I-130 does not grant the beneficiary a visa, nor does it establish any particular status for the beneficiary in the United States.

[2]   Plaintiffs argue that the McNeil Declaration should not be considered because of the "Best Evidence Rule," FED. R. EVID. 1002. The Best Evidence Rule requires that an
(continued...)

and Immigration Services ("USCIS") Website [Doc. # 1-2], at ECF page 2.

On November 4, 2006, the National Visa Center ("NVC") sent a Modified Followup Letter to Richardson, Cruz, and their legal counsel of record, Howard Thompson ("Thompson"),³ at the address the NVC had on file at the time, stating that a visa was available for Cruz.⁴ McNeil Decl., ¶ 8; *see also* Motion, at 6. The address the NVC had on record at that time for both Richardson and Cruz was 1251 Wilcrest, Apt. 308, Houston, Texas 77042. McNeil Decl., ¶¶ 5-6. The address of record for Thompson ("Thompson") was 2900 N. Loop W. Ste. 740, Houston, Texas, 77092. *Id.*, ¶ 7. The NVC does not have any other address on record for Richardson or Cruz. *See id.*, ¶¶ 5-6. Each copy of the Modified Followup Letter was returned as

---

²    (...continued)
"original writing" is required to "prove the content of a writing." *See id.* Because Defendant is not attempting to prove the content of any writing through McNeil's Declaration, but instead seeks to show a chain of events that may otherwise be provable through certain records, the Best Evidence Rule is inapplicable.

³    According to Cruz, her attorney was Ramon Cuevas ("Cuevas"). Complaint, ¶ 11; *see also* Letter from Cruz dated January 22, 2014 [Doc. # 19-2], at ECF page 20. Cuevas apparently was an attorney at Thompson's law firm or someone who held himself out as an attorney at that firm. *See* Letter from Richardson dated August 8, 2014 [Doc. # 22-2], at 1.

⁴    This information is available in the Consular Consolidated Database ("CCD"). *See* McNeil Decl., ¶¶ 1, 3. "The CCD contains replicated electronic data recording pending visa applications, visa interviews, and visas issued and refused at U.S. diplomatic and consular posts, including Ciudad Juarez, Mexico. The CCD also contains electronic data related to immigrant visa cases processed by the National Visa Center ("NVC")." *Id.*, ¶ 2.

undeliverable. *Id.*, ¶ 7.

On November 24, 2007, the NVC sent a "Term Letter 1" to Plaintiffs and Thompson, indicating their intent to terminate Richardson's I-130. *Id.*, ¶ 9; *see also* Motion, at 7. It is uncontested that these letters were returned as undeliverable. On December 27, 2008, the NVC sent a "Term Letter 2" to Plaintiffs and Thompson, all of which were returned "due to bad addresses for all recipients." McNeil Decl., ¶ 10; *see also* Termination Letter 2 Exemplar, *available at* http://www.state.gov/documents/organization/87929.pdf. On December 27, 2008, the Department of State ("State Department") revoked approval of the I-130 filed by Richardson on Cruz's behalf pursuant to 8 U.S.C. § 1153(g). *See* Complaint, ¶ 12; Decision Letter [Doc. # 16-9], at 1. Plaintiffs complain that they were never advised of the State Department's decision to revoke Richardson's I-130. Complaint, ¶ 12. On February 5, 2009, the physical file for Cruz's I-130 was destroyed in accordance with law and government document retention policies. McNeil Decl., ¶ 11; *see Park v. Gonzales*, 450 F. Supp. 2d 1153, 1163 (D. Or. 2006), *aff'd*, *Park v. Mukasey*, 514 F.3d 1384 (9th Cir. 2008) (stating that immigration service's policy to destroy visa petitions after termination of registration is a permissible interpretation of Section 1153(g) under *Chevron*).

On July 9, 2013, Cruz submitted a Form 1-485 application to adjust her

4

immigration status.  *See* Complaint, ¶ 13; Decision Letter [Doc. # 16-9], at 1; Form I-485 [Doc. # 16-6].  On October 31, 2013, Cruz appeared for an interview with USCIS "to determine [her] eligibility for adjustment of status."  Decision Letter [Doc. # 16-9], at 1.  On December 20, 2013, USCIS denied Cruz's I-485 application because the I-130 filed on her behalf had previously been revoked.  Complaint, ¶ 13; Decision Letter [Doc. # 16-9], at 1-2.

Plaintiffs filed the Complaint in this case on March 21, 2014.  In their Complaint, Plaintiffs seek a writ of mandamus compelling Defendant to rescind termination of the Visa Petition and request a declaratory judgment that Defendant's denial "of their approved petition for immigrant visa" was invalid.  Complaint, ¶¶ 18-19.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002); *Chambers v. Sears, Roebuck and Co.*, 428 F. App'x 400, 407 (5th Cir. June 15, 2011). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any

proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III. ANALYSIS

Plaintiffs seek a declaratory judgment that Defendant improperly terminated Richardson's Visa Petition and seek a writ of mandamus requiring Defendant to rescind his termination of that Petition.

A United States citizen may file a Form I-130 petition on behalf of an alien relative who wishes to immigrate to the United States. *See* 8 U.S.C. § 1154(a)(1)(A)(i) ("Any citizen of the United States claiming that an alien is entitled to classification by reason of a relationship . . . may file a petition with the Attorney General for such classification."). The Form I-130 requires the petitioner to provide information both about herself and about her alien relative (the "beneficiary"), including the relative's address. *See* Form I-130, *available at* http://www.uscis.gov/sites/default/files/files/ form/i-130.pdf.[5]

The Form I-130 is used to "establish the existence of a relationship to certain alien relatives who wish to immigrate to the United States." *See* Form I-130

---

[5] The current instructions for filling out a Form I-130 warn the petitioner to inform USCIS of any address changes. *See* Form I-130 Instructions, at 6, *available at* http://www.uscis.gov/sites/default/files/files/ form/i-130instr.pdf. There is no contention that these instructions have changed over time.

Instructions, at 1, *available at* http://www.uscis.gov/sites/default/files/files/ form/i-130instr.pdf. Submitting a Form I-130 does not alone allow an alien to be admitted into or stay in the United States. *See Park*, 450 F. Supp. 2d at 1156. If the Visa Petition is approved, the alien beneficiary may apply to register as a lawful permanent resident by filling out Immigration Form I-485. *Id.* Allocation of visas for alien relatives is limited by statute. *See* 8 U.S.C. § 1153(a).

Under Section 1153(g), the Secretary of State is required to "terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to the alien of the availability of such visa." *Id.* § 1153(g). However, the Secretary of State "shall reinstate the registration of any such alien who establishes within 2 years following the date of notification of the availability of such visa that such failure to apply was due to circumstances beyond the alien's control." *Id.* An alien is deemed "registered" for a visa from the time either when the alien files a Form DS-230 or Form DS-260 or when the State Department transmits to the alien "notification of the availability of an immigrant visa." 22 C.F.R. § 42.67(b). If the Secretary of State terminates an alien's registration, a Form I-130 filed on her behalf is automatically revoked. 8 C.F.R. § 205.1(a)(1); *see Park*, 450 F. Supp. 2d at 1157.

In the case at bar, the undisputed evidence of record reveals that on November

4, 2006, the NVC sent a letter to each Plaintiff individually and to their counsel stating that a visa was available. Cruz was thus "registered" on that date. Cruz had one year from that date—or until November 4, 2007—to apply for a visa. Cruz failed to do so.[6] The NVC sent Plaintiffs and their counsel two letters indicating their intent to terminate Cruz's registration and to revoke the Visa Petition. Defendant properly terminated Cruz's registration on December 27, 2008, after Cruz failed to apply for a visa or to contact NVC. *See* 8 U.S.C. § 1153(g). Similarly, Defendant properly revoked Richardson's Visa Petition after Cruz's registration was terminated. *See* 8 C.F.R. § 205.1(a)(1); *see also Park*, 450 F. Supp. 2d at 1162-63.

Plaintiffs contend that Defendant improperly terminated Cruz's registration because Defendant failed to give Cruz notice of visa availability. Plaintiffs' argument fails for two reasons. First, the evidence of record establishes that the NVC notified Cruz that a visa was available, and sent her two follow-up letters prior to terminating her registration and revoking Richardson's Visa Petition. The NVC mailed the notification letters to both Plaintiffs and to their counsel, Thompson, to the addresses Plaintiffs provided at the time Richardson submitted her Visa Petition. Plaintiffs have not disputed that neither they nor their counsel provided Defendant, USCIS, the NVC, or INS with an updated mailing address. Indeed, Cruz concedes, through a

---

[6] There is no evidence that Cruz filed a Form DS-230 or Form DS-260.

letter recently drafted and addressed to Thompson, that neither she nor her attorney ever updated her address with the government. *See* Letter from Cruz dated August 8, 2014 [Doc. # 22-2], at 1.[7]

It is well settled that Cruz had an obligation to notify the government of a change of address. State Department guidelines require applicants to maintain an updated address with the Department. 9 FAM § 42.83 n.5, *available at* http://www.state.gov/documents/organization/87925.pdf ("The applicant is responsible for providing the visa-issuing post with a current address. The applicant's failure to receive the notice of termination because he or she neglected to notify post of his or her change of address will not be considered as a reason 'beyond the applicant's control' for not pursuing the application."); *see also, e.g.*, *Singh v. Clinton*, 618 F.3d 1085, 1093 (9th Cir. 2010) ("Third, because visa applicants are responsible for maintaining a current address with the State Department, sending notice to Sukhwinder's last known address would have made him plainly responsible for failing to apply after the government properly transmitted notice to his address in India."); *see also Kasyupa v. Keisler*, 252 F. App'x 106, 108 (8th Cir. 2007) (stating

---

[7] In her letter, Cruz states: "My sister and I never received any details of the case as we moved and only advised Mr. Cuevas of our move. Mr. Cuevas failed to advise USCIS/NVC of our move. Additionally, your office relocated and failed to update my file with USCIS/NVC of your new address." Letter from Cruz dated August 8, 2014 [Doc. # 22-2], at 1.

that alien who had an I-130 petition and did not update his address with the government or his attorney could not challenge an *in abstentia* removal hearing based on a claim that he failed to receive notice of the hearing). Moreover, immigration statutes require registered aliens to update the Attorney General with any address changes and makes it a misdemeanor to fail to do so. *See* 8 U.S.C. §§ 1305(a), 1306(b). Aliens in removal proceedings must also provided the Attorney General "with a written record of any change of the alien's address or telephone number." 8 U.S.C. § 1229(a)(1)(F)(ii). The Fifth Circuit has held, like other Circuits, that an alien cannot challenge an *in abstentia* removal order due to the lack of notice when the alien failed to update his address with the immigration court. *See Gomez-Palacios v. Holder,* 560 F.3d 354, 360-61 (5th Cir. 2009); *see also, e.g.*, *United States v. Zelaya*, 293 F.3d 1294, 1298 (11th Cir. 2002); *Ohajah v. U.S. I.N.S.*, 953 F.2d 638, at *3 (4th Cir. 1992) (unpublished); *Lopez v. Gonzales*, 181 F. App'x 573, 576 (7th Cir. 2006). Both statutes and regulations make it evident that registered aliens and those applying to register are under a continuing obligation to update the government regarding any change of address. The State Department guidelines that require visa applicants to maintain a current address with the Department are entitled to deference. *See United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (noting that agency interpretive documents that are not entitled to *Chevron* deference may still "merit

some deference whatever its form, given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires"); *see also Skidmore v. Swift*, 323 U.S. 134, 139-40 (1944). Cruz's failure to keep the government apprised of a change to her address thus prevents Plaintiffs from now claiming that Defendant's revocation of Richardson's Visa Petition was improper because of a "failure to notify."

Second, Plaintiffs' claims fail to the extent that Plaintiffs assert that Defendant should "reinstate" Cruz's registration under Section 1153(g) because of "circumstances beyond [Cruz's] control" (*i.e.*, a lack of notice). Section 1153(g) mandates reinstatement of a terminated registration if an alien establishes "*within 2 years of the date of notification*" that failure to apply for a visa resulted from "circumstances beyond the alien's control." 8 U.S.C. § 1153(g) (emphasis added). Here, the NVC sent Cruz a letter stating that a visa was available on November 4, 2006. Plaintiffs filed this case on March 21, 2014, nearly 8 years after notification. Thus, Section 1153(g) cannot serve as a basis for reinstatement of Cruz's registration or termination of the rescission of Richardson's Visa Petition.

Plaintiffs also argue that Defendant could not have sent a letter of visa

availability on November 4, 2006,[8] because other State Department documents (specifically, the "Visa Bulletin") indicated that on that date the State Department was not processing I-130 applications of people who had filed the form in 1993 on behalf of a brother or sister. Even if Plaintiffs are correct about the general unavailability of certain visas at that time, they have not contested Defendant's evidence that the NVC in fact sent Cruz notice indicating a visa was available for her.[9] Plaintiffs' evidence fails to create a disputed issue of material fact that would prevent the Court from granting summary judgment in Defendant's favor.

Accordingly, because Defendant properly terminated Cruz's registration and revoked Richardson's Visa Petition pursuant to Section 1153(g) and because Cruz failed to maintain a current address with the government, Defendant is entitled to summary judgment on Plaintiffs' claims.

---

[8] There appears to be some confusion about the date that the NVC sent the "Modified Follow-up Letter" to Plaintiffs. The evidence of record indicates that the letter was sent on November 4, 2006. *See* McNeil Decl., ¶ 8. Both Plaintiffs and Defendant, however, state that the letter was sent on November 4, 2005. *See* Defendant's Motion [Doc. # 16], at 6; Plaintiffs' Response [Doc. # 19], at 7. This inconsistency is not material to the Court's disposition of Plaintiffs' claims because Plaintiffs never contested the termination, let alone within two years of that administrative action.

[9] Because Plaintiffs have not asserted any claim under the Constitution, the Court does not address Defendant's arguments seeking dismissal of putative Constitutional claims.

## IV.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant John F. Kerry's Motion to Dismiss [Doc. # 16] is **GRANTED**.  This case is **DISMISSED WITH PREJUDICE.**

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this   4th   day of **September, 2014**.

_____
Nancy F. Atlas
United States District Judge